420 So.2d 348 (1982)
Walton D. CHAMPION, As Personal Representative of the Estate of Joyce Caroline Champion, Deceased, Appellant,
v.
Roy Lee GRAY, Jr.; Roy L. Gray; Gladys Gray; Dixie Insurance Co., etc.; and Florida Farm Bureau Casualty Insurance Company, Etc., Appellees.
No. 81-1309.
District Court of Appeal of Florida, Fifth District.
October 6, 1982.
*349 Ann G. Paschall, of McClung & Paschall, Brooksville, for appellant.
Chris W. Altenbernd, of Fowler, White, Gillen, Boggs, Villareal and Banker, P.A., Tampa, for appellee Florida Farm Bureau Cas. Ins. Co.
Gary M. Witters, of Allen, Dell, Frank & Trinkle, Tampa, for appellees, Gray, Jr., Gray and Dixie Ins. Co.
DAUKSCH, Judge.
At issue in this appeal is the complex question of whether a plaintiff should be allowed to recover for the physical consequences of a mental or an emotional disturbance caused by a negligent act in the absence of physical impact upon the plaintiff. The rule in Florida is that absent physical impact upon the plaintiff, damages may not be recovered for mental anguish or physical injury resulting from emotional stress caused by the negligence of another. Gilliam v. Stewart, 291 So.2d 593 (Fla. 1974); Claycomb v. Eichles, 399 So.2d 1050 (Fla. 2d DCA 1981). Only the Florida Supreme Court can overrule the "impact rule" and we shall respect the rule until our supreme court sees fit to change it. Gilliam v. Stewart, 291 So.2d 593 (Fla. 1974); Hoffman v. Jones, 280 So.2d 431 (Fla. 1973). However, we suggest that the rule should at least be revisited and at best be changed.
This case is before us from an order dismissing a complaint with prejudice. The complaint alleged that Karen Champion, the child of Joyce and Walton Champion, was walking near a roadway when a car driven by a drunk driver left the road, struck the child and killed her. Immediately after the accident, Karen's mother, Joyce, came to the scene and discovered the body of her child. Overcome with shock and grief at the sight of and death of her daughter, Joyce collapsed and died.
Mr. Champion alleged that he lost his daughter, then his wife, as a direct and proximate result of the actions of the driver. The lawsuit against the defendants for the death of the daughter continued. The lawsuit against the driver for the death of the mother was dismissed because there was no actual physical contact upon the plaintiff (here plaintiff's decedent, the child's mother), and therefore no legal nexus between the actions of the driver and the death of the mother.
Because Florida still adheres to the impact rule, the trial court properly dismissed the complaint with prejudice. However, it has been held in other states that no physical contact is necessary and the impact rule has been discarded. The majority of jurisdictions now allow recovery, absent impact, for the negligent infliction of emotional stress, particularly where physical injury is produced as a result of such stress.[1]
*350 Our view is that Florida should now align itself with the overwhelming majority of jurisdictions which have abandoned the rule and condemn it as unjust and illogical. The rationale for the rule has certainly been seriously undermined in recent years. Rickey v. Chicago Transit Authority, 101 Ill. App.3d 439, 57 Ill.Dec. 46, 48, 428 N.E.2d 596, 598 (1981). Techniques for diagnosing the causal connection between emotional states and physical injuries have been significantly refined since the impact rule was first announced. Stewart v. Gilliam, 271 So.2d 466 (Fla. 4th DCA 1973), quashed, 291 So.2d 593 (Fla. 1974). Due to the advances of medical science in the field of psychic injuries, it is foreseeable to the defendant that his negligence may cause another to suffer emotional distress, and mere difficulty of proof or the possibility of fraud should not preclude the plaintiff from the opportunity to prove his injury. We agree with the rationale of Judge Mager in Stewart v. Gilliam, where he said:
The question is not really one of "impact" but rather the causal connection between the negligent act and the ultimate injury  a circumstance which in the last analysis does not seem to pose problems any more difficult to solve in a non-impact case than in an impact case. Causation is not peculiar to cases without impact; it is an ingredient in all types of personal injury litigation. The fact that there may be difficulty in proving or disproving a claim should not prevent a plaintiff from being given the opportunity of trying to convince the trier of fact of the truth of the claim. The question is one that falls within the province of a jury in light of the circumstances in the particular case.
271 So.2d at 473.
Additionally, if recovery in negligence for physical injuries resulting from emotional disturbance absent impact is allowed in Florida, the risk of fraudulent claims should be no greater than it currently is in this state for recovery which is available for the intentional infliction of emotional distress without contemporaneous physical injury. Furthermore, in those jurisdictions which allow recovery in negligence for emotional injuries without physical impact "the feared flood tide of litigation has simply not appeared." Niederman v. Brodsky, 436 Pa. 401, 411, 261 A.2d 84, 89 (1970). However, "[m]ore significant than what may have been the experience in other states is the basic principle that a fear of expansive litigation should not deter courts from granting relief in meritorious cases." Stewart v. Gilliam, 271 So.2d at 475.
The basic purpose of our court system is to provide a remedy to those who are injured by the fault of others. Article I, Section 21 of the Florida Constitution states: "The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay." Whether Walton Champion's wife died as a result of the defendant's negligence should be determined in court, and if it is proved that the allegations are true then he should recover what relief is available. To deny him relief for the shallow, *351 out-dated, unrealistic reasons underlying the impact rule does not comport with the justice required by our constitution.
There are two aspects to the problem presented in this case. The first aspect involves recoverability by a plaintiff for physical injuries due to mental trauma, negligently caused, absent impact. This aspect has already been discussed and we have expressed our view that an action for recovery should be maintainable. The second aspect is more difficult. The question becomes "whether the concept of duty in tort should be extended to third persons, who do not sustain any physical impact in the accident or fear for their own safety." Tobin v. Grossman, 24 N.Y.2d 609, 613, 301 N.Y.S.2d 554, 556, 249 N.E.2d 419, 421 (1969). In other words, "the mental disturbance and its consequences are not caused by any fear for the plaintiff's own safety, but by distress at some peril or harm to another person  as in the case of a mother witnessing the death of her child." W. Prosser, The Law of Torts 333, (4th ed. 1980). Of course, those jurisdictions which still follow the impact rule deny recovery in this situation. Id. Many courts which no longer require impact would also deny recovery because the mother (or other close relative) was not in the "zone of danger" and "the defendant could not reasonably anticipate any harm to the plaintiff, and therefore owes her no duty of care." Id. However, an increasing number of those courts which allow recovery absent impact have examined the policy factors involved and also allow a claim for relief where a parent or close relative has sustained substantial physical harm as a result of severe emotional distress over some peril or harm to another (usually a minor child), caused by the defendant's negligence, and the parent or close relative either witnessed the accident or soon came to the scene of the accident while the initial victim was still there.[2]
Until recently, the typical case in other jurisdictions allowing recovery for injuries arising from concern over harm to another involved a person (usually the parent) who was also put in fear for his own safety as a result of the defendant's negligence. In other words, recovery was allowed because the parent was in the "zone of danger." As stated by the Massachusetts Supreme Court in Dziokonski v. Babineau, 375 Mass. 555, 380 N.E.2d 1295, 1300 (1978):
It is arguably reasonable to impose liability for the physical consequences of emotional distress where the defendant's negligent conduct might have caused physical injury by direct impact but did not. The problem with the zone of danger rule, however, is that it is an inadequate measure of the reasonable foreseeability of the possibility of physical injury resulting from a parent's anxiety arising from harm to his child. The reasonable foreseeability of such a physical injury to a parent does not turn on whether that parent was or was not a reasonable prospect for a contemporaneous injury because of the defendant's negligent conduct.
In 1968, the California Supreme Court broke the pattern of denying recovery merely because the parent was not threatened with contemporaneous injury or was not in the zone of danger. The court held that a cause of action was maintainable on behalf of a mother, in no danger herself, who witnessed her minor daughter's death in a car accident allegedly caused by the defendant's negligence, and who suffered emotional disturbance and shock to her nervous system which caused her physical and mental pain and suffering. Dillon v. Legg, 68 Cal.2d, 728, 69 Cal. Rptr. 72, 441 P.2d 912 (1968). One year later, recovery by a mother who did not witness the accident *352 but arrived at the scene shortly thereafter was allowed by a California appellate court in Archibald v. Braverman, 275 Cal. App.2d 253, 79 Cal. Rptr. 723 (1969). The court stated: "Manifestly, the shock of seeing a child severely injured immediately after the tortious event may be just as profound as that experienced in witnessing the accident itself." Id. at 256, 79 Cal. Rptr. at 725. The California Supreme Court later confirmed in Krouse v. Graham, 19 Cal.3d 59, 76, 137 Cal. Rptr. 863, 872, 562 P.2d 1022, 1031 (1977) that a visual perception of the impact causing the death or injury was not required. Consequently, a growing number of courts have rejected the zone of danger test and allow recovery in cases where the parent or close relative was outside the zone of danger. Barnhill v. Davis, 300 N.W.2d 104 (Iowa 1981) (son, who was waiting for his mother at the opposite side of a traffic intersection, saw his mother's vehicle struck on the driver's side by another vehicle as she was proceeding through the intersection); Portee v. Jaffee, 84 N.J. 88, 417 A.2d 521 (1980) (mother, who watched her sevenyear-old son suffer and die when he became trapped in an elevator, was allowed recovery for mental and emotional distress even though she had not been subjected to any risk of physical harm); Sinn v. Burd, 486 Pa. 146, 404 A.2d 672 (1979) (mother saw her daughter, from doorway of her home, struck and killed by an automobile); Corso v. Merrill, 119 N.H. 647, 406 A.2d 300 (1979) (mother who heard a terrible noise and then saw her daughter lying seriously injured in the road, and father who came to the scene of the accident immediately thereafter, were allowed recovery despite fact that they alleged neither that they suffered physical impact nor that they were within the zone of danger); Dziokonski v. Babineau, 375 Mass. 555, 380 N.E.2d 1295 (1978) (mother suffered heart attack upon coming to the scene of where her minor daughter had been struck by an automobile moments earlier, father suffered heart attack upon learning of his wife's death and his daughter's injuries); D'Ambra v. United States, 114 R.I. 643, 338 A.2d 524 (1975) (mother saw her four-year-old son struck and killed by a mail truck); Leong v. Takasaki, 55 Haw. 398, 520 P.2d 758 (1974) (ten-year-old boy saw his stepgrandmother struck and killed by an automobile); D'Amicol v. Alvarez Shipping Co., Inc., 31 Conn.Sup. 164, 326 A.2d 129 (Super.Ct. 1973) (mother and father saw their child killed in an automobile accident); Toms v. McConnell, 45 Mich. App. 647, 207 N.W.2d 140 (1973) (mother saw her nine-year-old daughter struck and killed by a truck); Landreth v. Reed, 570 S.W.2d 486 (Tex.Civ.App., 6th Dist. 1978) (minor plaintiff was allowed recovery for physical injury sustained by her as a result of shock and emotional trauma of witnessing efforts to revive her infant sister who drowned in swimming pool of day nursery operated by defendant). These courts have recognized that "the zone of danger rule imposes unjust limitations on recovery and fails to protect worthy interests." Corso v. Merrill, 406 A.2d at 307. "It is foreseeable that a bystander may be emotionally distressed even though not himself in any physical danger." Barnhill v. Davis, 300 N.W.2d at 107. One court has stated that:
This new awareness of the unfairness of the zone of danger requirement in these cases is based upon the implicit acceptance that the emotional impact upon a parent witnessing [or contemporaneously perceiving] the killing of a minor child is at least as great and as legitimate as the apprehension that is inspired by a plaintiff being personally within the zone of danger.
Sinn v. Burd, 404 A.2d at 677.
Thus, we believe traditional principles of negligence analysis may be applied in such cases and the imposition of undue liability may be avoided by using the broader test of reasonable foreseeability. Measuring the defendant's conduct by this standard, "it is clear that it is reasonably foreseeable that, if one negligently operates a motor vehicle so as to injure a person, there will be one or more persons sufficiently attached emotionally to the injured person that he or they will be affected." Dziokonski, 380 N.E.2d at 1302.
*353 We agree with Professor Prosser's observation that "[i]t would be an entirely unreasonable burden on all human activity if the defendant who has endangered one man were to be compelled to pay for the lacerated feelings of every other person disturbed by reason of it, including every bystander shocked at an accident, and every distant relative of the person injured, as well as his friends." Prosser at 334. As stated by the court in Portee v. Jaffee:
The task in the present case involves the refinement of principles of liability to remedy violations of reasonable care while avoiding speculative results or punitive liability. The solution is close scrutiny of the specific personal interests assertedly injured. By this approach, we can determine whether a defendant's freedom of action should be burdened by the imposition of liability. In the present case, the interest assertedly injured is more than a general interest in emotional tranquility. It is the profound and abiding sentiment of parental love. The knowledge that loved ones are safe and whole is the deepest wellspring of emotional welfare... . No loss is greater than the loss of a loved one, and no tragedy is more wrenching than the helpless apprehension of the death or serious injury of one whose very existence is a precious treasure. The law should find more than pity for one who is stricken by seeing that a loved one has been critically injured or killed.
417 A.2d at 526.
Thus, in order to be worthy of legal protection, the emotional harm cannot be insignificant. It must be "a painful mental experience with lasting effects." Corso v. Merrill, 406 A.2d at 304. "In other words, the harm for which plaintiff seeks to recover must be susceptible to some form of objective medical determination and proved through qualified medical witnesses." Id.
Limits on liability which are consistent with the individual interest being injured have been established in those jurisdictions which would allow recovery under facts similar to those in the case sub judice. It has been noted, however, that "devising one hard and fast rule for limiting bystander recovery in mental suffering cases would be difficult and complex if not impossible." Toms v. McConnell, 207 N.W.2d at 144. We agree that "[t]he problem of limiting liability will be best surmounted and will be more justly resolved for all concerned by treating each case on its own individual facts." Id. It was stated in Dziokonski that "[e]very effort must be made to avoid arbitrary lines which `unnecessarily produce incongruous and indefensible results.' The focus should be on underlying principles. In cases of this character, there must be both a substantial physical injury and proof that the injury was caused by the defendant's negligence." 380 N.E.2d at 1302. (citations omitted). Beyond that, it is generally agreed that there are three major factors which should be considered in determining foreseeability in this type of case:
(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it.
(2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence.
(3) Whether plaintiff and the victim were closely related, as contrasted with an absence from relationship or the presence of only a distant relationship.
Dillon v. Legg, 69 Cal. Rptr. at 80, 441 P.2d at 920.
The court in Dziokonski found that:
It does not matter in practice whether these factors are regarded as policy considerations imposing limitations on the scope of reasonable foreseeability..., or as factors bearing on the determination of reasonable foreseeability itself. The fact is that, in cases of this character, such factors are relevant in measuring the limits of liability for emotionally based injuries resulting from a defendant's negligence. In some instances, it will be clear that the question is properly *354 one for the trier of fact, while in others the claim will fall outside the range of circumstances within which there may be liability.
380 N.E.2d at 1302.
With the foregoing considerations in mind, the court in Dziokonski concluded that:
The allegations concerning a parent who sustains substantial physical harm as a result of severe mental distress over some peril or harm to his minor child caused by the defendant's negligence state a claim for which relief might be granted, where the parent either witnesses the accident or soon comes on the scene while the child is still there.
Id.
Similarly, we believe that such allegations should state a cause of action for recovery in negligence. We take heed to the old adage: "Be not the first by whom the new are tried, nor yet the last to lay the old aside."[3] Therefore, because we deem the matter to be of great public importance, we certify the following question of law to the Florida Supreme Court:
I. SHOULD FLORIDA ABROGATE THE "IMPACT RULE" AND ALLOW RECOVERY FOR THE PHYSICAL CONSEQUENCES RESULTING FROM MENTAL OR EMOTIONAL STRESS CAUSED BY THE DEFENDANT'S NEGLIGENCE IN THE ABSENCE OF PHYSICAL IMPACT UPON THE PLAINTIFF?
AFFIRMED.
ORFINGER, C.J., and FRANK D. UPCHURCH, Jr., concur.
NOTES
[1] Barnhill v. Davis, 300 N.W.2d 104 (Iowa 1981); Portee v. Jaffee, 84 N.J. 88, 417 A.2d 521 (1980); Corso v. Merrill, 119 N.H. 647, 406 A.2d 300 (1979); Sinn v. Burd, 486 Pa. 146, 404 A.2d 672 (1979); Towns v. Anderson, 195 Colo. 517, 579 P.2d 1163 (1978); Melton v. Allen, 282 Or. 731, 580 P.2d 1019 (1978); Dziokonski v. Babineau, 375 Mass. 555, 380 N.E.2d 1295 (1978); Hunsley v. Giard, 87 Wash.2d 424, 553 P.2d 1096 (1976); First Nat. Bank v. Langley, 314 So.2d 324 (Miss. 1975); D'Ambra v. U.S., 114 R.I. 643, 338 A.2d 524 (1975); Leong v. Takasaki, 55 Haw. 398, 520 P.2d 758 (1974); Hughes v. Moore, 214 Va. 27, 197 S.E.2d 214 (1973); Whetham v. Bismarck Hospital, 197 N.W.2d 678 (N.D. 1972); Wallace v. Coca-Cola Bottling Plants, Inc., 269 A.2d 117 (Me. 1970), see also Culbert v. Sampson's Supermarkets, Inc., 444 A.2d 433 (Me. 1982) (no physical injury but recovery allowed, thus overruling Wallace limitations); Daley v. La Croix, 384 Mich. 4, 179 N.W.2d 390 (1970); Ver Hagen v. Gibbons, 47 Wis.2d 220, 177 N.W.2d 83 (1970); Okrina v. Midwestern Corp., 282 Minn. 400, 165 N.W.2d 259 (1969); Dillon v. Legg, 68 Cal.2d 728, 69 Cal. Rptr. 72, 441 P.2d 912 (1968); Savard v. Cody Chevrolet, Inc., 126 Vt. 405, 234 A.2d 656 (1967); Robb v. Pennsylvania R. Co., 8 Storey 454, 58 Del. 454, 210 A.2d 709 (Del.Sup. 1965); Trent v. Barrows, 55 Tenn. App. 182, 397 S.W.2d 409 (1965); Haight v. McEwen, 43 Misc.2d 582, 251 N.Y.S.2d 839 (1964); Strazza v. McKittrick, 146 Conn. 714, 156 A.2d 149 (1959); Monteleone v. Co-operative Transit Co., 128 W. Va. 340, 36 S.E.2d 475 (1945); Kelly v. Lowney & Williams, Inc., 113 Mont. 385, 126 P.2d 486 (1942); Rasmussen v. Benson, 133 Neb. 449, 275 N.W. 674 (1937), adhered to, 135 Neb. 232, 280 N.W. 890 (1938), see also Fournell v. Usher Pest Control Co., 208 Neb. 684, 305 N.W.2d 605 (1981) (Nebraska has abrogated the "impact" rule but still requires that some type of physical injury result from the negligently inflicted suffering and that recovery for emotional disturbance must be limited by at least requiring the plaintiff to have been within the "zone of danger or actually put in fear for his own safety"); Sternhagen v. Kozel, 40 S.D. 396, 167 N.W. 398 (1918); Whitsel v. Watts, 98 Kan. 508, 159 P. 401 (1916); Alabama Fuel & Iron Co. v. Baladoni, 15 Ala. App. 316, 73 So. 205 (1916); Hunter v. Southern R. Co., 152 N.C. 682, 68 S.E. 237 (1910); Green v. Shoemaker, 111 Md. 69, 73 A. 688 (1909); Stewart v. Arkansas Southern R. Co., 112 La. 764, 36 So. 676 (1904); Mack v. South Bound R.R., 52 S.C. 323, 29 S.E. 905 (1898); Rickey v. Chicago Transit Authority, 101 Ill. App.3d 439, 57 Ill.Dec. 46, 428 N.E.2d 596 (1981); Landreth v. Reed, 570 S.W.2d 486 (Tex. Civ.App., 6th Dist. 1978); Federal: Sahuc v. United States Fidelity & Guar. Co., 320 F.2d 18 (5th Cir.1963); Kaufman v. Western Union Tel. Co., 224 F.2d 723 (5th Cir.1955), review denied, 350 U.S. 947, 76 S.Ct. 321, 100 L.Ed. 825 (1956); Belt v. St. Louis-San Francisco R. Co., 195 F.2d 241 (10th Cir.1952); 38 Am.Jur.2d, Fright, Shock, etc., § 13 et seq., p. 16, footnote 7 (1968); Commentary, Torts: The Impact Rule  Nuisance or Necessity? 25 U.Fla.L.Rev. 368, Appendix (1973).
[2] Barnhill v. Davis, 300 N.W.2d 104 (Iowa 1981); Portee v. Jaffee, 84 N.J. 88, 417 A.2d 521 (1980); Sinn v. Burd, 486 Pa. 146, 404 A.2d 672 (1979); Corso v. Merrill, 119 N.H. 647, 406 A.2d 300 (1979); Dziokonski v. Babineau, 375 Mass. 555, 380 N.E.2d 1295 (1978); D'Ambra v. United States, 114 R.I. 643, 338 A.2d 524 (1975); Leong v. Takasaki, 55 Haw. 398, 520 P.2d 758 (1974); D'Amicol v. Alvarez Shipping Co., Inc., 31 Conn.Sup. 164, 326 A.2d 129 (Super.Ct. 1973); Toms v. McConnell, 45 Mich. App. 647, 207 N.W.2d 140 (1973); Landreth v. Reed, 570 S.W.2d 486 (Tex.Civ.App., 6th Dist. 1978).
[3] Commentary, Torts: The Impact Rule  Nuisance or Necessity? 25 U.Fla.L.Rev. 368 (1973) citing A. Pope, "An Essay on Criticism II," in The Norton Anthology of English Literature 1440 (1962) (emphasis added).