Robert GNIRK, Special Administrator of
the Estate of Beau Gnirk, Deceased,
and Wilma Gnirk, Plaintiffs,

v.

The FORD MOTOR COMPANY,
Defendant.

Civ. No. 81-3067.

United States District Court,
D. South Dakota, C.D.

Oct. 14, 1983.

Lee A. Tappe, Platte, S.D., and Charles
Rick Johnson, Johnson, Eklund & Davis,
Gregory, S.D., for plaintiffs.

Stan Siegel, Siegel, Barnett & Schutz
Law Offices, Aberdeen, S.D., and Harry
Pearce, Pearce, Anderson & Durick, Bis-
marck, N.D., for defendant.

MEMORANDUM OPINION

DONALD J. PORTER, District Judge.

I

Plaintiff Wilma Gnirk seeks compensato-
ry damages against The Ford Motor Com-

pany (Ford) for emotional distress inflicted upon her while witnessing the death of her child, a passenger in a Ford car.[1] Ford moves for summary judgment, contending that plaintiff, as a "bystander" cannot recover for emotional distress because (1) it was not intentionally inflicted upon her by Ford; and (2) since she sustained no "accompanying physical injury, i.e., a physical impact and attendant, contemporaneous physical injury", even if Ford's legal liability for her child's death were assumed, she may not recover. Ford further contends that all damages incident to the child's death must be sought under the South Dakota wrongful death act, SDCL 21–5–7 which act does not allow recovery for emotional distress. For the reasons following, Ford's motion for summary judgment is denied.

## II

Plaintiff alleges that on November 20, 1980 she and her thirteen month old son were traveling in a 1976 Ford L.T.D. car. She co-owned and was then driving the car. In order to open a fence gate she stopped the car, shifted the gear selector into park, and left the engine running. She got out on the driver's side, leaving her son in the front seat with a seat belt fastened around him. While she was opening the gate the car gear shifted from park to reverse and the car backed up, struck a post, and then went forward a distance into a stock dam. From the time the car first moved, plaintiff chased it and tried unsuccessfully several times to get into the moving car to stop it. When it finally stopped, the car was completely submerged in the stock dam. The child was in the car alone. Plaintiff, a non-swimmer, entered the water but could not locate the car. She then walked a mile and a half to the nearest farmhouse for help.

The event above described, plaintiff alleges, caused her great depression, insomnia, permanent psychological injury, and physical illness.

Plaintiff's claim is analyzed under 402A. This is not to say it is the only theory which will survive defendant's motion. Essentially the same principles apply to an action under 402A as to an action for breach of implied warranty. *Pearson v. Franklin Laboratories, Inc.,* 254 N.W.2d 133, 138–39 (S.D.1977).

## III

■ Upon the facts here, it is appropriate to view plaintiff in the role of a user of Ford's product, rather than as a "bystander".[2] Bystander cases are typically void of any product liability implications running from the defendant tort-feasor to the bystander-plaintiff.[3] Having no connection

---

1. The complaint consists of four counts. Count one is a wrongful death action brought by plaintiff's husband, Robert Gnirk, special administrator of the estate of the deceased child, Beau Gnirk, pursuant to S.D.C.L. ch. 21–5. Count two is a survival action brought by Robert Gnirk, pursuant to S.D.C.L. § 15–4–1. Count three is the action by Wilma Gnirk for emotional distress. In count four, both Robert and Wilma Gnirk seek exemplary damages.

2. *See* Note, *Emotional Distress In Products Liability: Distinguishing Users from Bystanders,* 50 Fordham L.Rev. 291 (1981); Note, *The Negligent Infliction of Mental Distress: The Scope of Duty and Foreseeability of Injury,* 57 N.D.L. Rev. 577, 599–602 (1981).

3. *See generally* Annot., 29 A.L.R.3d 1337 (1970). A minority of courts adhere to the "impact rule" which precludes recovery unless the plaintiff-bystander suffered some contemporaneous physical injury or impact from the tortious acts of defendant committed against a third party. *See, e.g., Champion v. Gray,* 420 So.2d 348 (Fla.Dist.Ct.App.1982); *Little v. Williamson,* 441 N.E.2d 974 (Ind.Ct.App.1982). A second level of courts, following the lead of New York's highest court in *Tobin v. Grossman,* 24 N.Y.2d 609, 249 N.E.2d 419, 301 N.Y. S.2d 554 (1969), deny recovery unless the plaintiff-bystander was in the "zone of danger"— meaning that in order to recover, plaintiff must have actually feared for her own safety as a result of the defendant's acts. *See, e.g. Rickey v. Chicago Transit Authority,* 98 Ill.2d 546, 75 Ill.Dec. 211, 457 N.E.2d 1 (Ill.1983) (available on Westlaw, All States library); *Stadler v. Cross,* 295 N.W.2d 552 (Minn.1980); *Keck v. Jackson,* 122 Ariz. 114, 593 P.2d 668 (1979); *Shelton v. Russell Pipe & Foundry Co.,* 570 S.W.2d 861 (Tenn.1978); *Towns v. Anderson,* 195 Colo. 517, 579 P.2d 1163 (1978); *Whetham v. Bismarck Hospital,* 197 N.W.2d 678 (N.D. 1972); *Guilmette v. Alexander,* 128 Vt. 116,

with the tort-feasor, or his negligent tort, the only part played by the bystander is to serve as the unwilling eyewitness to the death or injury of the victim by the tort-feasor. Thus, the bystander has nowhere to look but to the common law rules of negligence, if she [he] is to find a legal duty upon the tort-feasor not to inflict emotional distress upon her by negligently killing or injuring the victim in her presence.

Plaintiff here has a legal connection with Ford which goes to the heart of the case, making it unnecessary for her, or for this court, to look beyond the Restatement (Second) of Torts § 402A (1965) [hereinafter cited as 402A]. By virtue of her status as the user of the Ford car involved, at the time involved, Ford under 402A owed to plaintiff an independent legal duty not to harm her. *Engberg v. Ford Motor Co.,* 87 S.D. 196, 205 N.W.2d 104 (1973); *Shaffer v. Honeywell, Inc.,* 249 N.W.2d 251 (S.D. 1976). Moreover, Ford's duty to plaintiff under *Engberg* stems not from the South Dakota wrongful death act but rather from 402A [4]. Ford's legal duty to plaintiff under 402A endures even if the victim does not survive.[5]

## IV

In 1918 the South Dakota Supreme Court considered an issue pertinent to the damage issue here. In *Sternhagen v. Kozel,* 40 S.D. 396, 167 N.W. 398 (1918) it was plaintiff's claim that, owing to an alleged tort "she suffered a severe fright and through such fright received a severe mental and physical shock." The Court saw the question presented as whether or not "one, who, through a tort committed against him, suffers a fright—which fright is not the result of an accompanying physical injury, but is itself the proximate cause of a physical injury—can recover damages for such fright and the resulting physical injury." The Court answered as follows:

"Without determining whether one could recover for fright alone, such fright not accompanying physical injury either as its result or cause we are of the opinion that: When physical injury accompanies a fright as its effect, the injured party may

259 A.2d 12 (1969); *Klassa v. Milwaukee Gas Light Co.,* 273 Wis. 176, 77 N.W.2d 397 (1956). *See also* Restatement (Second) of Torts § 313(2) comment d. (1965) (adopting zone of danger rule); Still, an approximately equal number of courts have abolished the impact rule and the zone of danger rule in favor of a broader "foreseeability test." Under this test, if the plaintiff-bystander's emotional distress is reasonably foreseeable to the defendant-tort-feasor—considering on a case by case basis such factors as the relationship between the plaintiff and the third party-victim, the proximity of the plaintiff to the scene of the accident, and the method by which the plaintiff is made aware of the accident—then recovery is allowed. *See, e.g., Dillon v. Legg,* 68 Cal.2d 728, 441 P.2d 912, 69 Cal.Rptr. 72 (1968) (landmark); *Haught v. Maceluch,* 681 F.2d 291 (5th Cir.1982) (applying Texas law); *Paugh v. Hanks,* 6 Ohio St.3d 72, 451 N.E.2d 759 (1983); *Culbert v. Sampson's Supermarkets, Inc.,* 444 A.2d 433 (Me.1982); *Barnhill v. Davis,* 300 N.W.2d 104 (Iowa 1981); *Walker v. Clark Equipment,* 320 N.W.2d 561 (Iowa 1982); *Portee v. Jaffee,* 84 N.J. 88, 417 A.2d 521 (1980); *Corso v. Merrill,* 119 N.H. 647, 406 A.2d 300 (1979); *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979); *Dziokonski v. Babineau,* 375 Mass. 555, 380 N.E.2d 1295 (1978); *D'Ambra v. United States,* 114 R.I. 643, 338

A.2d 524 (1975); *Leong v. Takasaki,* 55 Hawaii 398, 520 P.2d 758 (1974); *Hughes v. Moore,* 214 Va. 27, 197 S.E.2d 214 (1973).

4. Defendant cites *Anderson v. Lale,* 88 S.D. 111, 216 N.W.2d 152 (1974) for the proposition that "sorrow, mental distress, and grief suffered by the parents" of a deceased child are not recoverable under the South Dakota wrongful death act, SDCL 21–5–7. In light of the 402A manufacturer-user analysis discussed in this opinion the *Anderson* reference is not relevant.

5. Although the case allows recovery to plaintiff as a "bystander" and does not concern 402A, the Supreme Court of Pennsylvania has held that an action for negligent infliction of emotional distress is independent of an action under the Pennsylvania wrongful death act. The statute provides recovery for pecuniary loss sustained as a result of decedent's death. *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672, 675 n. 3 (1979).

The South Dakota wrongful death act, S.D. C.L. § 21–5–7 provides: "In every action for wrongful death the jury may give such damages as they think proportionate to the pecuniary injury resulting from such death to the persons respectively for whose benefit such action shall be brought."

recover for the fright, for the physical injury, and for any mental injury accompanying such fright and physical injury, exactly as one can recover where the fright is the result of a physical injury."

Two South Dakota cases were cited by defendant. *First National Bank of Jacksonville v. Bragdon,* 84 S.D. 89, 167 N.W.2d 381 (1969) involved a counterclaim by debtors against a creditor for malicious conduct in debt collection. *Chisum v. Behrens,* 283 N.W.2d 235 (S.D.1979) was a suit by a widow against a mortician concerning the care of the body of the deceased husband. Both cases involved claimed intentional or malicious conduct, by the creditor in *Bragdon,* and by the mortician in *Chisum.* *Chisum* adhered to the rule stated in *Bragdon* that "where the act is willful or malicious, as distinguished from being merely negligent, recovery may be had for mental pain, though no physical injury results."

■ The issue in both *Bragdon* and *Chisum* involved infliction of mental pain by intentional or malicious misconduct. The issue in the instant case involves tortiously but unintentionally inflicted injury. *Sternhagen* is more in point, but the opinion did not discuss the facts of the case. The *Sternhagen* court did not indicate what physical phenomena or manifestation is sufficient to constitute the "physical injury" referred to in the quotation from the case, *supra* [167 N.W. at 399]. That issue has not yet been addressed by the state Supreme Court. In the absence of a controlling statute or decision of the highest court of the state, this court, exercising diversity jurisdiction, 28 U.S.C. § 1332, must apply the rule it believes the Supreme Court of South Dakota would adopt. *McElhaney v. Eli Lilly & Co.,* 564 F.Supp. 265, 268 (D.S.D.1983).

In recent years, [due to increased understanding of the relationship between physical and psychic injury] courts have realistically construed the term "physical injury". *See, e.g., Haught v. Maceluch,* 681 F.2d 291, 299 n. 9 (5th Cir.1982) (applying Texas law; depression, nervousness, weight gain, and nightmares are equivalent to physical injury); *D'Ambra v. United States,* 396 F.Supp. 1180, 1183–84 (D.R.I.1973) ("psychoneurosis" or acute depression constitutes physical injury); *Corso v. Merrill,* 119 N.H. 647, 658, 406 A.2d 300, 307 (1979) (depression constitutes a physical injury); *Mobaldi v. Board of Regents,* 55 Cal.App.3d 573, 578, 127 Cal. Rptr. 720, 723 (1976) (depression and weight loss constitute physical injury), *overruled on other grounds, Baxter v. Superior Court,* 19 Cal.3d 461, 466 n. 4, 563 P.2d 871, 874 n. 4, 138 Cal.Rptr. 315, 318 n. 4 (1977); *Hughes v. Moore,* 214 Va. 27, 29, 35, 197 S.E.2d 214, 216, 220 (1973) (anxiety reaction, phobia and hysteria constitute physical injury); *Daley v. LaCroix,* 384 Mich. 4, 15–16, 179 N.W.2d 390, 396 (1970) (weight loss and nervousness constitute physical injury); *Toms v. McConnell,* 45 Mich.App. 647, 657, 207 N.W.2d 140, 145 (1973) (depression constitutes physical injury).[6]

There is no fine line distinguishing physical from emotional injury. *D'Ambra v. United States,* 396 F.Supp. 1180, 1184 (D.R. I.1973) (quoting from *Sloane v. Southern Cal. Ry. Co.,* 111 Cal. 668, 680, 44 P. 320, 322 (1896)); *Molien,* 27 Cal.3d at 929, 616 P.2d at 820–21, 167 Cal.Rptr. at 838–39. The Restatement acknowledges this much:

[Emotional distress] accompanied by transitory, non-recurring physical phenomena, harmless in themselves, such as dizziness, vomiting, and the like, does not make the actor liable where such phenomena are in themselves inconsequential and do not amount to any substantial bodily harm. On the other hand, long continued nausea or headaches may amount to physical illness, which is bodily harm; and even long continued mental

---

6. An increasing number of courts have dispensed with the requirement that plaintiff's emotional distress must have manifested itself in some form of physical injury in order to be recoverable. *See Paugh v. Hanks,* 6 Ohio St.3d 72, 451 N.E.2d 759 (1983); *Culbert v. Sampson's Supermarkets, Inc.,* 444 A.2d 433, (Me. 1982); *Barnhill v. Davis,* 300 N.W.2d 104, (Iowa 1981); *Molien v. Kaiser Foundation Hospitals,* 27 Cal.3d 916, 616 P.2d 813, 167 Cal. Rptr. 831 (1980); *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979); *Leong v. Takasaki,* 55 Hawaii 398, 520 P.2d 758 (1974).

disturbance, as for example in the case of repeated hysterical attacks, or mental aberration, may be classified by the courts as illness, notwithstanding their mental character.

Restatement (Second) of Torts, § 436A comment c (1965).

 Comment c, above quoted, is a reasonable rule or guide for trial of the issue of whether plaintiff sustained bodily injury proximately caused by alleged emotional disturbance inflicted by Ford. If plaintiff makes out a case for the jury on the issue, and if the jury find for her on the issue she is entitled to recover damages for emotional distress suffered during the event in which her son drowned, for physical injury proximately caused, and for any mental injury accompanying such emotional distress and physical injury, *Sternhagen, supra,* 167 N.W. 398.

This court believes that the South Dakota Supreme Court would so rule if confronted with the damage issue here presented. This court is mindful that in the past, the first and second Restatement of Torts is a source the South Dakota Supreme Court has frequently relied upon in formulating rules of tort law. *See McElhaney v. Eli Lilly & Co., supra,* 564 F.Supp. 265, 269. South Dakota cases cited at fn. 11.

 At the request of both plaintiff and Ford (under FRCP 12(b)), this court treats Ford's original motion to dismiss (FRCP 12(b)(6)), as a motion for a summary judgment (FRCP 56), in favor of Ford, as to count three. The parties in briefing referred to a deposition of plaintiff taken December 29, 1981 and to her later deposition taken May 16, 1983. A motion for summary judgment may be granted "only when, viewing the facts and inferences that may be derived therefrom in the light most favorable to the non-moving party, the moving party establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." *Impro Products, Inc. v. Herrick,* 715 F.2d 1267, at 1272 (8th Cir.1983).

The court concludes that a genuine issue of fact exists concerning whether the event

in which her son lost his life inflicted great depression, insomnia, and permanent psychological injury upon plaintiff, which injury proximately caused bodily injury to plaintiff. Ford requested that no consideration be given to plaintiff's affidavit. The court has not considered it, concluding that the Ford motion must be overruled in any event.